C. S. WOOTEN, Adm'r., &c. *v.* JOHN V. SHERRARD and others,

The borrower of Confederate currency must repay the real value which he received, and not its mere nominal representative.

*Therefore,* where A loaned B $2,700 in Confederate money on the 16th day of October, 1862, for which a promissory note was given, A at the time verbally promising to take the same currency in re-payment at any time within twelve months, within which time B tendered the amount of the note in such money, and A refused it: *Held,* in an action on the note, that A was entitled to recover the full amount thereof, subject to the legislative scale at the time the note was given, and interest.

(*Wooten* v. *Sherrard*, 68 N. C. Rep. 334; *Terrell* v. *Walker*, 66 N. C. Rep. 244; *Mitchell* v. *Sawyer*, ante 70, cited and approved.)

CIVIL ACTION, to recover the amount of a promissory note, tried before *Buxton, J.,* at the Special (January) Term, 1874, of WAYNE Superior Court, upon the following

WOOTEN, Adm'r., &c. v. SHERRARD et al.

CASE AGREED.

The action was brought December 29th, 1869, returnable to Spring Term, 1870, on a promissory note under seal, payable to Wait. Thompson, the intestate of the plaintiff, dated October 16th, 1862, signed by defendant Sherrard, and Lewis and Coley, the other defendants, promising to pay twenty-seven hundred dollars, on which sum small credits were entered in 1867 and 1869. Sherrard and Lewis have been declared bankrupts. The note was given for borrowed Confederate money at the date of the same, at which time there was a verbal agreement between Sherrard and Thompson, that if Sherrard would pay the note within twelve months after the date thereof, he, Thompson, would receive Confederate money. Sherrard tendered the amount due on the 15th of May, 1863, in Confederate money to Thompson, which was refused.

The plaintiff made a demand on the defendants, before suit was brought, for the scaled value of said note at the date thereof and interest, and now claims the scaled value at the date of the contract, interest and premium added.

The defendant claims damages by way of counter-claim, for said refusal of plaintiff's intestate to receive Confederate money.

It is agreed that the value of Confederate money at the date of the note, and at the date of the tender above set forth, is that fixed by the Legislative scale.

Upon the foregoing facts his Honor gave the following judgment :

This is one of the *hard* cases, so far as the defendants are concerned, growing out of the dealing of the parties in Confederate currency. His Honor felt constrained, however, by the legislative and judicial action had in relation to the subject, to hold the defendants liable for the value of the currency borrowed at the date it was borrowed.

The defendants, Sherrard and Lewis, having received their discharge in bankruptcy, judgment is rendered in favor of the plaintiff, C. S. Wooten, administrator of Wait. Thompson, against the defendant, Willie B. Fort, administrator of John

Coley, for the amount of the note, principal and interest, subject to the legislative scale at the date of October 16th, 1862, with current rate of premium on gold added, say 10 *per cent.*, to wit, for the sum of twenty-one hundred and sixty-two dollars and eighty-seven cents, of which thirteen hundred and fifty dollars is balance of principal money, and subject to the credits endorsed, and also for costs to be taxed, &c.

From which judgment, defendant, W. B. Fort, administrator, &c., appealed.

*Smith & Strong*, for appellant.
*Faircloth & Grainger*, contra.

RODMAN, J. This is the same case which was before this Court at January Term, 1873, reported under the name of *Wooten* v. *Sherrard*, 68 N. C. Rep. 334. On the trial the defendant, by way of equitable counter-claim, set up a claim for damages arising out of the refusal by the plaintiff to receive Confederate currency in payment of the note sued on when it was tendered to him within twelve months after the making of the note, as he had agreed to do.

In the case of *Terrell* v. *Walker*, 66 N. C. Rep. 224, which was an action brought prior to the C. C. P., the defendant attempted to set up a similar defence under the plea of set off. The Court was of opinion that it could not be done, but in the opinion which I delivered, I suggested that *possibly* damages might be recovered for the breach of such a contract, either by an action founded on the contract, or under the new system of pleading, by way of a counter-claim. The questions which we were then called on to decide were entirely novel; there were not only no authorities to govern us, but there were no cases in which the circumstances were so nearly similar that they could be relied on as guides. The suggestion was made in the hope that if the question again occurred, it should be argued on general principles of equity and as to how far the true principle of equity in such a case, whatever it might be found to

be, was affected by our legislation. The learned counsel who argued this case have responded to our wishes, and probably have presented to us all that can fairly be said on behalf of their respective sides.

The defendant argues : " The contract by the plaintiff to receive Confederate currency, if paid within twelve months, was a valid contract ; the breach of it was an injury to the defendant which entitled him to damages. The measure of damages for breach of contract is the actual damage sustained, provided it be the natural and probable result of the breach. That damage in this case is the difference between the value of the currency on the day when it was borrowed and its value on the day it was tendered and refused." If Confederate currency is regarded as a commodity, like stocks or specific articles, and all dealings in it as speculative investments, it is difficult, if not impossible, to resist this argument.

On the other side it is said :

1. " Confederate currency cannot be regarded as a commodity. That it shall not be so regarded is a direct and necessary inference from the ordinance of 1866.

2. Although it can never be necessary in any Court of a State to vindicate the equity of one of its statutes, except to show that it is not manifestly inequitable, the equity of the ordinance of 1866 may be vindicated on admitted principles.

If Confederate currency is looked at through its whole history, it was as a fact, neither money at all times, or a commodity at all times. Money, strictly speaking, i. e. gold and silver, or its legal equivalent, has in fact or in contemplation of law an unvarying value. All commodities have a fluctuating and speculative one. At first, and for several years, Confederate currency was regarded and dealt in, as money in the Southern States. It soon began to depreciate and continued steadily to do so. But the people had faith in it, and their contracts generally were made with reference to its value at the time, and without anticipation of its future. This of course gradually

**IN THE SUPREME COURT.**

changed, and towards the close of the war, it was refused as a currency and dealt in merely as a commodity. In a case where neither lender or borrower looked to a depreciation of the currency lent, which did nevertheless take place through accidents unforeseen by the parties, it would be inequitable to permit the borrower to have an advantage from the accident by discharging his debt by a thing of less value than he received. By allowing him to do so, he would get something for which he had given no equivalent. A contract to receive Confederate currency within twelve months, if construed to be one to receive it, notwithstanding it might be depreciated, or even worthless, would be without consideration. There was no reciprocal risk on the part of the borrower, inasmuch as though it might fall, it could not possibly rise above the value of " dollars," which *prima facie* means coin. It is a settled doctrine of law that after an actual receipt by a creditor of less than his debt in discharge of the whole, he may still collect the residue. *Cumber* v. *Wane*, Smith L. C. and notes; *Mitchell* v. *Sawyer* at this term, (ante 70.) This doctrine has never been said to be equitable, and in the absence of special circumstances, it is not so. With what consistency can a creditor be compelled to receive less than his debt in discharge of it upon a mere promise to do so, when an actual receipt of less would not effect a discharge?

By being compelled to repay the value which he received, the debtor fails to gain an advantage which under the circumstances would be an unjust one; but he loses nothing; he has received and had the use of so much value. The creditor gets nothing but what he loaned, and it cannot be equitable to take the whole of that."

Probably these or similar views influenced the Convention of 1866. This Court is not required to pass on their soundness. We are bound to consider the equity between the parties to be that which the ordinance directly or by necessary inference declares to be. That is, that the borrower of Con-

federate currency must repay the real value which he received, and not its mere nominal representative. It cannot be said that this legislation alters the contract, or impairs its obligation. The contract being payable in Confederate currency, and remaining unpaid at the end of the war, had become by accident, impossible of fulfillment in the particular sense intended by the parties. This failing, the rule for construing the contract was the general intent. This could be ascertained on the presumption that the parties intended to assume such obligations as equity prescribed. It was competent to the Convention to declare what rule of equity was applicable in such cases. It did not profess to make a new contract for the parties, but to ascertain on principle of equity what their contract was. This view is in accordance with that taken on general principles of equity by Sir William Grant in *Pilkinton* v. *Comm'rs. of Claims*, 2 Knapps P. C. Cases, 18, cited in Story Confl. Laws, par. 313a., in which both the distinguished Judges approve the opinion of Vinnius to the same effect.

PER CURIAM. There is no error in the judgment below which is affirmed.